UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.  07-22835-CIV-AMS
<u>CONSENT CASE</u>

**MARIA EUGENIA CHACON, et al.,**

    Plaintiffs,

v.

**EL MILAGRO CHILD CARE CENTER, et al.,**

    Defendants.
_____/

<u>ORDER DENYING PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY JUDGMENT</u>

    This cause is before the Court upon Plaintiffs' Motion for Partial Summary Judgment (DE # 34). The Parties have consented to full disposition by the undersigned Magistrate Judge (DE # 23). The District Court Judge has entered an order referring this matter to the undersigned in accordance with the parties' consent (DE # 26).

    After careful consideration of the Parties' memoranda, the relevant case law, the record as a whole, and after hearing oral argument from the Parties on the Motion, the Court hereby DENIES Plaintiffs' Motion for Partial Summary Judgment against Defendants because issues of material fact remain in dispute this matter.

    I.  <u>Factual and Procedural Background</u>

    Plaintiffs, Maria Eugenia Chacon and Adelina Avila filed this matter against Defendants El Milagro Care Center, Inc. ("El Milagro" or "the Center") and Vetsi M. Martinez ("Martinez") seeking to recover money damages for unpaid overtime wages and minimum wage, as required by the Florida Constitution and pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201, et seq., ("FLSA") (DE ##s 1, 5, 12).

    At all times material to this action, EL Milagro was licensed as an assisted living

facility ("ALF"), and was owned and operated by Defendant Vetsi Martinez.[1]  The Center housed residents on two floors who remained at the Center for varying lengths of time, up to three years.

Plaintiff Maria Eugenia Chacon was hired by Defendant Vetsi Martinez to work at the Center in 2000 and continued to work there through 2007.  Ms. Chacon's duties included cleaning and cooking dinner (one day a week) for the residents.  Ms. Chacon resided at the Center.

Plaintiff Adelina Avila was also hired by Defendant Vetsi Martinez.  She worked as a cook at the Center in 2001 and continued to work there until November of 2007.  Ms. Avila also resided in one of the rooms in the Center.

In their Second Amended Complaint, Plaintiffs allege generally that jurisdiction for this matter is predicated upon section 216 of the FLSA, and specifically allege that the Defendants' business and Plaintiffs' work for the Defendants affected interstate commerce because the materials at the job moved through interstate commerce prior to and subsequent to Plaintiffs' use (DE # 12 at ¶¶ 6, 12).  Plaintiffs further allege that Defendant, El Milagro, was an assisted living facility that received federal funding and grossed over $500,000 annually. *Id.*

In its Answer to Plaintiffs' Second Amended Complaint, Defendants admitted that the Court has jurisdiction over this matter pursuant to the FLSA (DE # 17 at ¶ 1), but denied Plaintiffs' interstate commerce allegations and the other jurisdictional elements related to El Milagro and demanded strict proof thereof for those allegations (DE # 17 at ¶ 2).

---

[1] According to Ms. Martinez's deposition, she no longer owns EL Milagro Care Center (DE # 35-3 at 8-9).

Plaintiffs filed the presently pending Motion for Partial Summary Judgment asserting that no genuine issues of material fact remain regarding jurisdiction because El Milagro is an "enterprise" as that term is defined under the FLSA, and thus are subject to its requirements (DE #34).[2] In addition, Plaintiffs contend that the FLSA companionship exemption does not apply to this case because the Plaintiffs worked for the Defendants at a group facility and not in a private home.

Defendants filed an opposition to Plaintiffs' Motion countering that the Center was not subject to the FLSA because the Center did not meet the definition of an enterprise. Defendants further contended that the Center was a private home for purposes of the companionship exemption under the FLSA.[3]

The undersigned held an oral argument on the Motion, wherein the Parties presented their respective positions. For the following reasons, the undersigned concludes that Plaintiffs' Motion for Summary Judgment should be denied.

## II. Standard for Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure authorizes entry of summary judgment where the pleadings and supporting materials show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is properly regarded not as a disfavored procedural shortcut but, rather, as an integral part

---

[2] The Parties have stipulated that if the corporate Defendant, the Center, is found liable, the individual Defendant, Vesti Martinez shall be jointly and severally liable as an FLSA employer (DE # 35-3 at 5, DE # 57 at 3).

[3] The Defendants did not file a cross motion for summary judgment in their opposition to Plaintiffs' Motion. The Defendants filed an untimely separate motion for summary judgment that was stricken by this court (DE ##s 42, 65).

of the federal rules as a whole, which are designed to secure a just, speedy, and inexpensive determination of every action. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). However, all reasonable doubts about the facts should be resolved in favor of the non-movant. *Clemons v. Dougherty County*, 684 F.2d 1365, 1369 (11th Cir. 1982) (citations omitted). If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial. *Id*. Thus, summary judgment may be inappropriate even where the parties agree on the basic facts, but disagree about the inferences that should be drawn from these facts. *Profitel Group, LLC. V. Polyone Corp.*, 238 Fed. Appx. 444 (11th Cir. 2007) *citing Clemons*, 684 F.2d 1368. If reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment. *Id.* However, the mere existence of a scintilla of evidence in support of the non-movant's position will be insufficient; there must be evidence on which the jury could reasonably find for the non-movant. *Id. citing Burton v. City of Belle Glade*, 178 F.3d 1175, 1187 (11th Cir.1999) (quotation omitted)).

Where the moving party bears the burden of proof, it is incumbent upon the moving party to produce evidence to establish its claim. However, "where the nonmoving party will bear the burden of proof at trial on a dispositive issue, ... Rule 56(e) requires the nonmoving party to go beyond the pleadings and ... designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp., supra.*, 477 U.S. at 324. The moving party is required only to point to the absence of evidence in the record as to that issue. In the case at bar, Plaintiffs seek summary judgment as to one issue for which they bear the burden of proof – FLSA jurisdiction – as well ass with respect to an issue for which Defendants bear the burden of proof – the companionship exemption from FLSA coverage.

### III. Discussion and Analysis

#### A. FLSA Jurisdiction

Under the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq., an employee "engaged in commerce or in the production of goods for commerce," or "employed in an enterprise engaged in commerce or in the production of goods for commerce" must be paid for hours worked over forty hours per week "at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). Thus, the FLSA provides coverage in two circumstances: (1) where an employee is engaged in commerce or the production of goods for commerce; or (2) where an employee works for an "enterprise" engaged in commerce or in the production of goods for commerce. *Ares v. Manuel Diaz Farms, Inc.*, 318 F.3d 1054, 1056 (11th Cir. 2003).

1. Enterprise Coverage under the FLSA

In this case, the Plaintiffs seek a summary judgment determination that the Defendants are subject to the requirements of the FLSA as an "enterprise" pursuant to 29 U.S.C. § 203(s)(1), which provides in pertinent part:

> (s)(1) "Enterprise engaged in commerce or in the production of goods for commerce" means an enterprise that--
>
> (A)(i) has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person;.[4] and

---

[4] Although Plaintiffs included this allegation in their Motion for Partial Summary Judgment they did not provide any facts to support the claim that the Plaintiffs worked with materials that moved through interstate commerce. Similarly, Plaintiffs did not argue coverage under this prong at the oral argument. Therefore, this Order only addresses Plaintiffs' arguments regarding whether Defendants are subject to FLSA jurisdiction based upon enterprise coverage as an institution primarily engaged in care of the sick, aged, mentally ill or defective.

>**(ii) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated);[5]**
>
>**(B) is engaged in the operation of a hospital, an institution primarily engaged in the care of the sick, the aged, or the mentally ill or defective who reside on the premises of such institution, a school for mentally or physically handicapped or gifted children, a preschool, elementary or secondary school, or an institution of higher education (regardless of whether or not such hospital, institution, or school is public or private or operated for profit or not for profit);**

**Plaintiffs argue that the undisputed facts demonstrate that the Defendants are subject to the FLSA as they own and operate an enterprise that is engaged in the operation of an institution primarily engaged in the care of the sick, the aged or mentally ill or defective who reside on the premises of such institution (DE #34 at 2).  At the hearing on the Motion, the Plaintiffs further argued that the court should focus its inquiry on the activities of the individual Plaintiffs, rather than on the institution as a whole in determining whether jurisdiction exists under this definition of enterprise.  In addition, the Plaintiffs argued that because the Center was an ALF under Florida law, that it met the enterprise definition on that ground, as well.**

**In determining whether a business meets this definition of enterprise, courts have examined the specific features of a facility at issue.  In *Kitchings v. The Florida United Methodist Children's Home, Inc.*, 393 F. Supp. 2d 1282 (M.D. Fla. 2005), for example, a defendant who ran a not for profit children's home moved for summary judgment in an FLSA action arguing, *inter alia*, that the home was not an FLSA enterprise as it was not**

---

[5] **The only evidence in the record regarding the annual gross income of El Milagro Care Center was the deposition testimony of Vetsi Martinez who denied that El Milagro ever grossed over $500,000 annually.  Plaintiffs did not dispute this evidence and did not argue otherwise at the oral argument.  Thus, the undersigned does not address this prong in this Order.**

an institution primarily engaged in the care of the sick, the aged, or the mentally ill or defective. In determining that the home did not meet that definition of enterprise under the FLSA, the court engaged in a thorough analysis of the characteristics of the home including the requirements for the admission of the children, and the extent of treatment and psychological services provided to the children. *Id*. at 1296-97. Notably, the court in *Kitchings*, had detailed evidence before it related to the funding of the home and the physical condition of the residents in the home. *Id.* at 1288-90. *Accord Brennan v. Harrison County, Miss.*, 505 F.2d 901, 903 (5th Cir. 1975) (declining to extend coverage under the FLSA based upon allegations that the entity was primarily engaged in providing a residence for persons who were elderly or ill where court concluded that the primary purpose of the home was to provide residence for indigent persons and thus did not fall under FLSA jurisdiction).

Similarly, in *Marshall v. Sunshine and Leisure, Inc.*, 496 F. Supp. 354, 356-58 (M.D. Fla. 1980), in holding as a matter of law that the defendant facility met the definition of an enterprise, the court relied upon the undisputed facts that all of the persons residing in the facility were elderly and/or physically debilitated; that employees of the defendant were available 24 hours a day to assist the residents with their personal needs such as getting a glass of milk in the middle of the night or attending to a coughing spell; that the employees "shave residents, give haircuts and provide such personal services as food preparation, maid service, housecleaning, and assistance with personal hygiene;" that the employees assist the residents with walking and bathing, wash clothes, and provide transportation; and that the charter of the corporate defendant stated that the general purpose of the corporation was to house the elderly. Thus, in that case, there was no genuine dispute that the defendant was in the business of caring for the aged.

In contrast, in this case, the depositions of Ms. Chacon, Ms. Avila and Ms. Martinez all provide conflicting descriptions of the nature, purpose, residency requirements and services provided by the Center.  Specifically, Ms. Chacon testified at her deposition that most of the residents at the Center were sick and the majority had mental health issues.[6] (DE # 42-2).  She testified that the facility housed both young and elderly people and stated that there were fourteen patients on the first floor and twelve beds available for residents on the second floor.  Ms. Chacon testified that although there were no psychiatrists employed at the facility, psychiatrists would come by on a monthly basis and further stated that the people at the Center would receive disability checks, had a social worker, and all came from the hospital.  Ms. Chacon stated that although she was not medically trained, she was assigned to ensure that the residents/patients took the proper dosages of their prescriptions that the residents brought with them to the Center.  She stated that "they" would not give medications to the people residing on the second floor of the Center and described those residents as "doing everything on their own."  She described one resident as having diabetes and another one as having lung cancer.  Ms. Chacon stated that the people were free to come and go as they pleased.

Plaintiff Adelina Avila testified in her deposition that all of the residents at the Center were "sick" and having "mental problems" (DE # 42-3).  She stated that there

---

[6] An interpreter was utilized at Ms. Chacon's and Ms. Avila's depositions.  However, the transcript from those depositions are replete with instances where it is unclear whether the deponent's complete answers were translated or whether the exact words were translated from English to Spanish.  In addition, there are several instances where there transcript states "No translation/interpretation".

were twenty-eight residents at the facility and described all of the residents as "older" and "elderly" and stated, "they were all from like 55, 50, 60 years old." *Id.* at 54. However, she then confirmed that there was one person in his 30s. Ms. Avila stated that the Center was "very much" like a hotel and stated that there was no age restriction on the people who wanted to live at the Center. In addition, Ms. Avila confirmed that a person need not be disabled or retired to live in the Center, but did have to be homeless. Ms. Avila stated that a doctor would come by two times a month to check on the residents, including checking their blood pressure; and, that nurses would come once a month to draw their blood, but confirmed that there were no nurses or pharmacists or psychiatrists who worked for El Milagro. Also, Ms. Avila testified that the residents were free to come and go as they liked without restrictions.

Further, and largely in contradiction to the testimony of Ms. Chacon and Ms. Avila, Defendant Vetsi Martinez testified in her deposition that although the Center was licensed as an assisted living facility, the people living there were completely independent, but homeless (DE #35-3). Ms. Martinez stated that some of the residents saw a psychiatrist because of mental problems, but she denied that they received treatment at the Center. Ms. Martinez also stated that only fourteen people would stay at the Center at any one time. She denied that anyone at the Center ever checked to make sure that the residents took their medication because they did not have a nursing license; and, she stated that the Center was prohibited from providing medical care to its residents. Ms. Martinez stated that the residents washed their own clothes. She confirmed that El Milagro received $2000.00 a month from Medicaid as an assisted living facility and testified that in 2005, each resident would pay a maximum of $634.00 per month.

9

**Thus, there is conflicting evidence as to the number of patients/residents at the center, the physical and mental conditions of those residents, and the nature and extent of the services provided by the Center.  A court may not make credibility determinations on a motion for summary judgment.  *Reyna v. Conagra Foods, Inc.*, 506 F. Supp. 2d 1363, 137-71 (M.D. Ga. 2007).  Based upon the conflicting testimony in the case at bar, the Court is unable to rule as a matter of law that Center was an institution primarily engaged in the care of the sick, the aged or mentally ill or defective; and thus cannot determine that the Center qualifies as an enterprise under the FLSA.  Therefore, genuine issues of material fact remain in dispute on this issue and Plaintiffs' motion for summary judgment must be denied on this ground.**

**Morever, the Plaintiffs' assertion that the court should examine the work activities of the Plaintiffs rather than the Center, as a whole, is without merit.  The very definition of enterprise at issue specifically states, "...an *institution* primarily engaged in the care of the sick, the aged, or the mentally ill or defective." (emphasis added).  Thus, that definition focuses on the primary purpose of the institution and not the individual employees, unlike the first definition of enterprise which examines the activity of the "employee."**

**In addition, the Fair Labor Standards Act Advisor issued by the U.S. Department of Labor, while not binding and not issued for purposes of rendering a legal opinion, provides some guidance in this area with the following:**

> **Enterprise Coverage Hospitals and Residential Care Facilities**
>
> **The phrase institution primarily engaged in the care of the sick, the aged, the mentally ill or developmentally disabled who live on the premises means an institution (other than a hospital) primarily engaged in (i.e. more that (sic) 50% of the income is attributable to) providing care to individuals who reside on the premises...**

*See* http://www.dol.gov/elaws/esa/flsa/scope/screen30.asp.  In addition, the Advisor provides the following for Residential Care under enterprise coverage,

> A private institution for the residential care of emotionally disturbed persons would come within the coverage of the FLSA if more than 50% of its residents have been admitted by a qualified physician, psychiatrists, or psychologist

*See* http://www.dol.gov/elaws/esa/flsa/docs/residential.asp?er.  These definitions are very similar to those found in the Department of Labor Field Operations Handbook regarding FLSA enforcement for institutions providing "residential care of emotionally disturbed persons", "community living centers...for retarded persons" and "Care of the aged and infirm."  *See* Dept. Of Labor, Field Oper. Handbook, §§.12g12, g14, g15 (1990)

However, even when these definitions are applied to the case at bar, the Plaintiffs simply have not presented any evidence to demonstrate that either 50% of the income from the Center is attributable to providing care to the individuals and, in fact, have provided no evidence or testimony related the total amount of income spent on the care of residents at the Center.  Similarly, the Plaintiffs have not demonstrated that more than 50% of the residents have been admitted to the Center by a qualified physician, psychiatrist or psychologist.  Thus, the court is also unable to conclude on the record before it that El Milagro Care Center meets the enterprise definition under any of these tests.

Finally, the undersigned notes that the Defendants spend significant time discussing the nature of assisted living facilities and the limitation of federal regulations as applied to those facilities.  However, the court does not need to dwell on those arguments and notes that Plaintiffs stopped short of arguing that every ALF is automatically subject to the FLSA.  Rather, Plaintiffs have argued that the ALF in this

matter is subject to the FLSA, as an enterprise, because it is an institution primarily engaged in the care of the sick, the aged, or the mentally ill or defective who reside on the premises of such institution.  However, as discussed above the Plaintiffs have failed to show that it the Defendant primarily cared for the "sick", "aged", "mentally ill" or "defective" and thus have not shown that this particular ALF is subject to the FLSA.  Moreover, the Florida statute entitled "Assisted Living Facilities Act," Fla. Stat. § 429.01, which governs the Center at issue, provides a broad definition of what qualifies as an assisted living facility and does not limit it to those facilities that engage in the care of the sick, the aged or mentally ill or defective.  Thus, Plaintiffs are not entitled to summary judgment on this ground either, as the fact that a facility is an ALF is not dispositive of whether the institution was primarily engaged in the care of the sick, the aged, or the mentally ill or defective for purposes of FLSA enterprise coverage.

        2.       Medicaid/Federal Funding

Plaintiffs also assert that the Defendants' business utilized federal funding from Medicare and Medicaid which is sufficient to trigger any "commerce" requirement under 29 U.S.C. § 203(s)(1)(B).  Plaintiffs argue that because it is undisputed that the Defendants received monthly Medicaid payments totaling $2000 for all of the patients every month, that they are subject to the FLSA (DE # 34 at 4).  For support of this assertion, Plaintiffs cite to *Ferguson v. Neighborhood Housing Services of Cleveland, Inc.,* 780 F.2d 549, 552 (6th Cir. 1986).  However in *Ferguson,* the court examined whether the defendant's employees were engaged in commerce and concluded that the defendant's program was intimately involved in federal programs and was a disburser of substantial amounts of federal funds. Id. at 552-54.  The Plaintiffs herein have not provided any such evidence in this case.  Moreover, this court is unaware of, and

Plaintiffs have failed to identify, any per se rule that institutions that receive medicaid payments automatically are subject to the requirements of the FLSA.  Significantly, in *Kitchings*, discussed at length above, the court concluded that the children's home in that case did not meet the enterprise definition at issue here, despite the fact that the home received medicare payments for its behavioral services.  *Kitchings,* at 1290.  Thus, Plaintiffs' claims fail on this ground as well.

Simply put, Plaintiffs have failed to meet their summary judgment burden of demonstrating that no material issues of fact remain regarding whether El Milagro Care Center was an institution as that term is defined in the FLSA.  Accordingly, the court denies Plaintiffs' Partial Motion for Summary Judgment on this issue.

B. <u>Companionship Exemption</u>

Plaintiffs also seek a determination from this court that the Companionship Exemption of the FLSA does not apply to the instant action.  The FLSA provides that any employee "employed in domestic service employment to provide companion services for individuals who (because of age or infirmity) are unable to care for themselves (as such terms are defined and delimited by regulations of the Secretary)" is exempted from its requirements.  29 U.S.C. § 213(a)(15).  Plaintiffs argue that this exemption may not be applied to the instant case because the Plaintiffs, Ms. Chacon and Ms. Avila, were not employed in a private home, as stated in 29 C.F.R. § 552.3, which provides the definition of domestic service employment as that term is used in the FLSA.

Defendants counter that each resident at the Center considered it their home, and thus, the companionship exemption applies because the Plaintiffs served as domestic companions to each individual resident.

The companionship services exemption to the FLSA applies when certain

domestic and companionship services are performed for elderly or infirm individuals in a "private home." See 29 C.F.R. § 552.3.  However, the Supreme Court in *Long Island Care at Home, LTD., v. Coke*, 551 U.S. 158 (2007), held that pursuant to 29 C.F.R. 552.109 (a), such services could be provided by a third party and still be entitled to the companionship exemption.  In addition, other appellate courts have held that the determination of whether a particular employee performs services in a private home requires a case-by-case, fact-specific inquiry. *Welding v. BIOS Corp.*, 353 F.3d 1214, 1218(10th Cir. 2004) (applying a six factor inquiry in determining whether companionship services are provided in a private home and noting that such a determination is to be made on an evaluation of the living unit of each person receiving services); *Madison v. Res. for Human Dev., Inc*., 233 F.3d 175, 183 (3d Cir.2000) (noting that the determination of what constitutes a 'private home' in the context of the FLSA companionship exemption must be made on a case-by-case basis, taking into account all aspects of the living arrangements.)  Finally, in *Lott v. Rigby*, 746 F. Supp. 1084 (N.D. Ga. 1990), cited by the Plaintiffs for support of their position, the district court specifically noted that "[a] separate and distinct dwelling maintained by the individual or family in an apartment, house or hotel my constitute a private home."  *Id*. at 1087. Although the court concluded that the group residence at issue in that case was not a "private home," it placed emphasis on the fact that the residence was a state maintained facility, which is not the case in the matter at hand. *Id*.  The court in *Lott* also relied, in part, on the fact that the employee had to be employed by the individual or the family, a proposition that no longer is true after the Supreme Court's ruling in *Long Island Care at Home v. Coke* case.  See *Buckner v. Florida Habilitation Network, Inc.,* 489 F.3d 1151 (11th Cir. 2007) (holding, based upon *Coke,* that a domestic service employee was exempt from the

FLSA even if employed by a third party employer).

In this case, as stated previously, the Defendants and Plaintiffs disagree about the nature of the Center including details regarding the living units provided to each resident. The undersigned recognizes that whether the Plaintiffs are exempt employees under the FLSA pursuant to the companionship exemption is an affirmative defense for which the Defendants carry the burden of proof at trial. *Corning Glass Works v. Brennan*, 417 U.S. 188 (1974). However, for purposes of the instant motion for partial summary judgment, the Defendants have sufficiently raised an issue of material fact to rebut that the Plaintiffs, as movants, are entitled, as a matter of law, to a finding that companionship services were not provided in a private home for purposes of the FLSA. Thus, again, there remain material facts in dispute on this issue which preclude the court from making a determination of whether the Center qualifies as a private residence and whether its employees may be considered domestic service employees. *See, e.g., Fowler v. Incor*, 279 Fed. Appx. 590 (10th Cir., May 12, 2008) (remanding case to district court to determine whether residential program living units constituted private residences for purposes of FLSA companionship exemption). Accordingly, the Plaintiffs' summary judgment motion must be denied on this ground as well.[7]

### IV. Conclusion

For the above reasons, the undersigned concludes that the Plaintiffs have failed to demonstrate that there is no genuine issue as to any material fact and that they, as the moving party, are entitled to judgment as a matter of law.

---

[7] In reaching this result, the undersigned feels constrained to note that this is a close issue; however, construing the facts and inferences in the light most favorable to Defendants, and considering the confusing nature of the deposition testimony, it is prudent to deny summary judgment on this issue.

Therefore, it is hereby

**ORDERED AND ADJUDGED** that Plaintiff's Motion for Partial Summary Judgment (DE # 34) against Defendants is **DENIED**.

**DONE AND ORDERED** in chambers in Miami, Florida, on July 9, 2009.

_____
ANDREA M. SIMONTON
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
All Counsel of Record via CM/ECF